# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

WILLIE DAVIS,

     PLAINTIFF,

v.                                  CASE NO.: CV-07-J-753-NE

CINRAM, INC.,

     DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 13), memorandum and evidence in support of said motion (docs. 14-17), the plaintiff's brief and evidence in opposition (docs. 21 and 22), and the defendant's reply (doc. 28).  Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

## I.  Factual Background

Plaintiff sued his past employer for violations of Title VII, 42 U.S.C. §§ 2000e *et seq*., and 42 U.S.C. § 1981, as amended, for race discrimination for failure to promote, and for terminating him in retaliation for filing an EEOC charge based on that failure to promote, and for violations of the Fair Labor Standards Act ("FLSA"),

29 U.S.C. § 216(b) and § 217, for terminating him in retaliation for filing a lawsuit under the FLSA.[1]

The plaintiff began working for the defendant in May 2001.  Plaintiff depo. II at 47, plaintiff depo. I at 38.[2]  Defendant manufactures and distributes digital media. Its biggest customer is Twentieth Century Fox Home Entertainment ("Fox").  Fox has offices and employees in defendant's buildings.  Marsh depo. at 37-38.[3]

The plaintiff was hired by Martin "Scooter" Williams, who was also his supervisor.[4]  Plaintiff depo. II at 47-48.  In February 2003 the plaintiff was promoted to a team lead position in Fox Inventory Control.  Plaintiff depo. II at 49-52; defendant exhibit 1(B).  Williams testified he promoted the plaintiff because the plaintiff was the best candidate for that position.  Williams depo. at 14, 58.  In April 2006 the plaintiff received a raise, which was approved by Williams.  Plaintiff depo. II at 72-73; defendant exhibit 1(B).

---

[1]The plaintiff is a member of the conditional class certified in *Anderson v. Cinram*, CV 06-J-1108-NE, an action alleging violations of the FLSA, also pending before this court.  That case was filed June 6, 2006.

[2]The plaintiff's deposition of January 30, 2008, submitted by defendant as Exhibit 1, is referred to as "depo. II."  The plaintiff's deposition of August 22, 2006, in *Cinram v. Malaspina, et al.*, submitted by defendant as exhibit 2, is referred to as "depo. I."

[3]Jeff Marsh is the Director of Account Services and Inventory Management.  Marsh depo. at 8.

[4]Martin Williams is employed by defendant as Fox Inventory Control Manager.  Williams depo. at 8-9.  He reports to Jeff Marsh.  *Id.*

Shane Malaspina, employed by defendant as a Fox Inventory Control Specialist, told the plaintiff and others that Martin Williams did not want African-Americans in management.  Plaintiff depo. II at 79; Malaspina declaration, ¶ 4.  He heard the same comment from Renee Rogers, a data entry clerk.  Plaintiff depo. II at 79-80.  However, the plaintiff worked with Williams for four or five years and never heard him make any comments like this.  *Id*. at 81.  Martin Williams knew Malaspina told people he said this, but asserts he never made this statement.  Williams depo. at 39-40, 77-78.  Malaspina even made this comment about Williams while he and Williams were meeting with Hassler.  Hassler depo. at 149-150.  Williams stated this arose from a conversation with Malaspina where he told Malaspina not to let race or other issues enter decision making with regard to assignment of people in the workplace.  *Id.* Malaspina agreed he misunderstood Williams.  *Id.* at 151.

The plaintiff applied for the position of Fox Inventory Control Specialist when Malaspina announced he was leaving the company.[5]  Defendant exhibit 1(F); Marsh depo. at 10.  Malaspina recommended either the plaintiff, Bryan Williams or Jason Anderson to fill his position, and Marsh interviewed all three of them.  Marsh depo. at 43-44.  The plaintiff asserts during his interview with Marsh, Marsh stated that

---

[5]The defendant's Inventory Control Department managed inventory of defendant's customer, Fox.  Plaintiff depo. II at 93-94.  Williams was the supervisor for this department.  *Id*., at 110-111.

"whoever gets the job it's not going to be because of their color.  It's going to be because they can do the job."  Plaintiff's depo. II at 90.  Marsh told him he did not know if  Fox would be comfortable with plaintiff.  *Id*.  Marsh denies making any racial comments.  Marsh depo. at 48, 53.  Marsh told Malaspina that he thought Fox would be more comfortable with Bryan because he had previous interaction and experience with Fox.  *Id.* at 54.  According to Marsh, the plaintiff did not interview well, appeared very nervous and hesitant, and did not seem to have any aspirations with the company other than wanting a promotion and a five day a week job.[6]  *Id.* at 69-74, 77.

Bryan Williams ("Bryan") was promoted to this position.  Plaintiff depo. II at 85-87.  After Bryan was selected, Martin Williams told plaintiff he did not know why Jeff Marsh selected Bryan, but the plaintiff might want to consider going "somewhere else you fit in better," which plaintiff took as a racial comment.  *Id*.

Williams had nothing to do with filling this position.  Williams depo. at 16-18. However, he did not believe the plaintiff had enough experience for the position.  *Id.* at 27-36.  Malaspina told Marsh and Williams that he did not think Bryan was good for the job and that plaintiff or Anderson would be better.  Plaintiff depo. II at 90-91;

---

[6]The plaintiff, by declaration, states that Marsh never asked him any questions during the interview.  Plaintiff exhibit 1, ¶ 2.  The plaintiff also states that before Marsh interviewed him, he met with Williams, in Williams office, because Williams said he was interviewing for the position as well.  *Id.*, at 3.

defendant exhibit 4(C); declaration of Malaspina, ¶ 5.  Marsh and Martin Williams both told Malaspina that Fox would be more comfortable with Bryan.  Plaintiff depo. II at 90-91.  The plaintiff asserts this was because Bryan got introduced to everybody by supervisors and he did not.  *Id*. at 91-92.  The plaintiff further asserts that he was at least as qualified as Bryan for the position, if not more qualified.  *Id*. at 98-99.  The plaintiff agrees that Bryan already had a good working relationship with Fox, but states he knew how to do most of the job duties the position required.  *Id*. at 100-101.

The plaintiff believes that Williams made the decision to hire Bryan for the position, because Blair Whit "jumped up and took off" when plaintiff asked him who was going to get that job.  *Id.* at 104-105.  However, the plaintiff stated he had no evidence of who made the decision.  *Id.* at 105.  Martin Williams told him that Marsh made the decision.  *Id*. at 106; Marsh depo. at 125.  The plaintiff has no evidence he was not promoted because of his race.  Plaintiff depo. II at 131.

The plaintiff knew from his employee handbook he had a right to complain about discrimination, but never did because "I was told that they did not want to hear anymore about Scooter racism or Martin Williams' racist acts."  Plaintiff depo. II at 135, 137.  This all came from Malaspina.  Plaintiff depo. at 136.  When Malaspina went to Human Resources to complain about Williams trying to get him fired, or that Williams treated the white employees better than the black ones, he was told that

Williams had a "get out of jail free card.  He wasn't going to get fired.  And they didn't want to hear from anybody else about the situation."  *Id*. at 135-136.

The plaintiff was terminated August 4, 2006.  Defendant exhibit 1(B).  The plaintiff believes his termination was a group decision from Jeff Marsh, Larry Tabb[7] and Pete Hassler.[8]  Plaintiff depo. II at 110.  Williams did not have the authority to hire or fire anyone.  *Id.* at 111; Owens depo. at 77.  Hassler told the plaintiff he was terminated for theft of company property and dishonesty.[9]  Plaintiff depo. II at 111, plaintiff depo. I at 46.  No one told him he was fired due to his race, due to filing an EEOC charge or due to filing an FLSA lawsuit.  Plaintiff depo. II at 112.  Williams was informed that plaintiff was fired by either Hassler or Ken Owens.[10]  Williams depo. at 61.

The plaintiff asserts that he was terminated for filing an EEOC charge because that's "the truth."  Plaintiff depo.  II at 115.  He alleges that Hassler told him that if he filed any claims against defendant, he would be terminated.  *Id*. at 117-122.  This was in relation to an incident report regarding a security guard in April 2006.  *Id*. at

---

[7]Larry Tabb is the Vice President of Operations for defendant.  Hassler depo. at 115.

[8]Hassler is Director of Human Resources for defendant.  Hassler depo. at 13.

[9]The defendant sued the plaintiff, Malaspina and Beddingfield  in a separate action for theft of trade secrets in the Circuit Court of Madison County, Alabama, on August 8, 2006.  Plaintiff depo. II at 27-28, 111.  *See* defendant exhibit 2; *Cinram v. Malaspina, et al.,* CV 06-1540.  That case is set for trial on May 12, 2008.

[10]Owens is the department's Human Resources representative.  Hassler depo. at 235.

117-119; defendant exhibit 1(B).  Hassler asserts he never said this, but it would not be uncommon for him to stress the seriousness of cooperating with security.  Hassler depo. at 139-140.

After Shane Malaspina left,[11] the plaintiff asserts both he and Mike Naugle sent Malaspina information of defendant's.[12]  Plaintiff depo. II at 120, 125-126; plaintiff depo. I at 32-34, 84-85, 118-119; Hassler depo. at 25-27, 32.  The plaintiff states Naugle sent Malaspina the entire ISO Manual and was not fired.  Plaintiff depo. II at 126-127, 129.  Defendant was unaware of Naugle's involvement until after the action in the Circuit Court of Madison County was filed and never conclusively determined what Naugle sent Malaspina.  Hassler depo. at 32-33, 42-44, 48, 79-86.  Naugle did send Malaspina documents, but was counseled rather than terminated.  Hassler testified "Willie was promising to send everything in our ISO files and in the Fox Inventory Control files whereas Mike Naugle was sending confidential documents onesies and twosies."  Hassler depo. at 91.  Naugle was not terminated, sued by

---

[11]Although he announced his resignation, Malaspina was terminated by Marsh prior to the time he planned to leave for being confrontational and insubordinate.  Marsh depo. at 140-141; defendant exhibit 4(E).

[12]Due to information that was erased from the system when Malaspina left, the defendant had Owens monitoring emails to and from certain employees and Malaspina.  Owens depo. at 15-18; defendant exhibit 7.  After several months with nothing interesting, he was relieved of that responsibility.  Owens depo. at 32-36.  On August 4, 2006, Williams came to Owens with the laptop and told him to look at a particular email where Malaspina was requesting plaintiff send specific documents.  *Id.* at 36-37.  Owens stated that from the email, it appeared that plaintiff was confused and Malaspina was telling plaintiff where to look for information in defendant's system.  *Id.* at 37-38.

defendant, or enjoined, as plaintiff was, because he "has been told not to do it and there is an acknowledgment form that he was reminded of that exists and that he agreed to understand and acknowledge, abide by."[13]  *Id*. at 107, 110-111.  Rather, Naugle was reprimanded for "duplication of company records."  Defendant exhibit 5(C).  Tabb added that, when confronted, Naugle was very forthcoming and straightforward in the investigation.  Tabb depo. at 18.

The plaintiff's version of events is that when he got to work on August 4, 2006, he had an email from Kim Beddingfield forwarding a request from Malaspina for specific procedure documents that she was unable to find.[14]  Plaintiff depo. I at 97-104; defendant exhibits 2(J), 2(K), 2(L), 6(G), 6(J).  The plaintiff emailed Malaspina back with a spreadsheet, specifically stating that he had removed all of the data information from it.  Plaintiff depo. I at 45, 61, 93, 100.  The plaintiff asserts the information he sent Malaspina was not confidential.  Plaintiff depo. II at 128; plaintiff depo. I at 31, 34-35.  He did not see anything wrong with sending it, because he had removed the information.  Plaintiff depo. I at 93-94, 100, 143-144, 148.

---

[13]Naugle is not a plaintiff in *Anderson v. Cinram*.

[14]Beddingfield, also a named plaintiff in *Anderson v. Cinram*, was terminated for attendance issues on August 2, 2006, and sued by defendant in *Cinram v. Malaspina, et al.  See e.g.*, Hassler depo. at 109-111, 222; Beddingfield depo. at 22-23.  She sent Malaspina an error log that he had requested, with all the information in it deleted.  *Id.*, at 44-45, 72.

When confronted by Hassler, the plaintiff states that Malaspina asked for documents, specifically the ISO Manual for scrapping items. Plaintiff depo. I at 47-48. Regarding the remainder of the procedure documents Malaspina requested, the plaintiff emailed him back stating the documents were not where Malaspina thought they should be, and that he would look when he had time. *Id*. at 107-108. The forms really were still there, but plaintiff said he could not find them because he did not want to send them to Malaspina. *Id*. at 87-89, 113-114. Hassler stated he saw the emails as plaintiff agreeing to send Malaspina all the requested information. Hassler depo. at 222.

When confronted, plaintiff stated he had emailed Malaspina but denied sending any company documents. Hassler depo. at 240; Owens depo. at 48, 50. He also stated he did not intend to send anything like that. Hassler depo. at 240. Hassler thought the plaintiff became distraught. *Id.* at 242. According to plaintiff, when Hassler asked him if he sent anything, the plaintiff thought he meant regarding the ISO Manual. Plaintiff depo. I at 47-59. Hassler stated at the end of his meeting with plaintiff, he terminated plaintiff because he did not think he was being open and forthright. Hassler depo. at 230, 243, 247.

Before speaking to plaintiff, Hassler spoke to Larry Tabb about the situation. Hassler depo. at 222. According to Tabb, Hassler had already spoken to the plaintiff

when he contacted Tabb.  Tabb depo. at 10-15.   Hassler mentioned that because

plaintiff was a party to the FLSA suit, they were "giving him fodder for a retaliation

claim."  Hassler depo. at 224.  Tabb listened to Hassler's explanation of what

happened and instructed Hassler that the plaintiff should be terminated because he

was clearly not trustworthy.  Tabb depo. at 15-16.  Tabb also did not think

defendant's normal process of termination should be altered due to the pending FLSA

claim. *Id*. at 15-16.

The plaintiff admits he has no evidence that he was retaliated against for filing

an EEOC charge regarding the promotion.  Plaintiff depo. II at 131.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).   As the Supreme Court has explained the

summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence
> of an element essential to that party's case, and on which that party will
> bear the burden of proof at trial.  In such a situation, there can be no
> genuine issue as to any material fact, since a complete failure of proof

10

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The nonmovant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## III. Legal Analysis

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence.

*Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001);

*Stewart v. Booker T. Washington Ins*., 232 F.3d 844, 848 (11th Cir.2000).  With these

standards in mind, the court considers each of the plaintiff's claims.

***Race Discrimination and the Failure to Promote claim:***

A plaintiff may prevail on an employment discrimination claim by either

proving that intentional discrimination motivated the employer or producing

sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason

proffered by the employer, which permits, but does not compel, the trier of fact to

find illegal discrimination.  *Wilson v. B/E Aerospace, Inc,*. 376 F.3d 1079, 1088 (11th

Cir. 2004), citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 147-48,

120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).

Plaintiff asserts that the above facts constitute race discrimination in regard to

the April 2006 promotion.[15]   As the parties agree there is no direct evidence of

discrimination, the court applies the analysis required for circumstantial evidence.

This court must apply the three prong test fashioned by the Supreme Court in

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973).  *See also*

---

[15]Although plaintiff has stated these claims pursuant to 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981, both of these statutes are analyzed under the *McDonnell Douglas* framework, set forth above.  See e.g., *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998); *Peterson v. BMI Refractories,* 132 F.3d 1405, 1412 n. 13 (11th Cir.1998).

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981).  First, the plaintiff must establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee.  *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997). Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996).  The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted.  *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell*

*Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

The plaintiff meets his prima facie burden of proof by establishing that (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *Barrow v. Georgia Pacific Corp*. 144 Fed.Appx. 54, 58 (11th Cir.2005); citing *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th Cir.2000).  *See also Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir.2000).

The court has carefully read the evidentiary submissions.  For purposes of the pending motion only, the court assumes that the  plaintiff meets the elements of his *prima facie* case.  The plaintiff is a member of a protected class.  The parties do not dispute that he was qualified for and applied for the promotions in question, or that he was rejected.  Indeed, the defendant admits that the plaintiff was on the list of qualified applicants.

The court further assumes for purposes of this motion that Bryan Williams was "equally or less qualified" than the plaintiff, with regard to the April 2006 promotion.

14

Therefore the defendant must show a legitimate, nondiscriminatory reason for plaintiff's nonselection for this position.

Having considered all of the evidence presented, the court finds that the defendant did present a legitimate, non-discriminatory reason for its actions. The undisputed evidence is that Bryan Williams had a college degree, which plaintiff did not, that Bryan Williams was pursuing another degree, which plaintiff was not, that Fox was already familiar with Bryan Williams and liked him, and that Marsh thought after the interviews that Bryan Williams was the most eloquent of the three candidates. Marsh depo. at 59-81.

The court's role is not to act as a super personnel department that second-guesses employers' business judgments. *Lee,* 226 F.3d at 1253. Because the defendant has set forth a legitimate, non-discriminatory reason for its actions, the plaintiff must come forth with some evidence that such reasons were a mere pretext for discrimination. *Vessels v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 771 (11th Cir.2005).

The court must consider whether unlawful discriminatory animus motivated a challenged employment decision. *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999). *See also Wilson*, 376 F.3d at 1091. "To show that the employer's reasons were pretextual, the plaintiff must demonstrate such

weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" *Cooper v. Southern Co.,* 390 F.3d 695, 725 (11th Cir.2004)).  The plaintiff must point to "concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990).

The plaintiff alleges that this promotion was tainted by Martin Williams not wanting to promote another African-American and that, despite all of the evidence to the contrary, Martin Williams was "directly involved in the decision to promote Bryan."  Plaintiff's response at 16.  To show discriminatory animus on the part of Martin Williams, the plaintiff asserts Williams stated he did not want to promote another African-American.  However, there is no evidence that Martin actually made this comment.  Rather, plaintiff's sole evidence of this is Malaspina's claim Williams said this.  The plaintiff unequivocally stated that he never heard Williams make such statements, and Hassler testified that what Williams actually said was that race should never enter into a workplace decision.  Hassler depo. at 150.

Assuming Malaspina actually heard Williams make the statement in question, the court still cannot find a genuine issue of material fact exists for trial because what

Malaspina says he heard Williams say is undisputably hearsay.  Furthermore, even if the plaintiff could produce admissible evidence of Williams' intent to discriminate, the court would have to ignore all of the undisputed evidence that Martin Williams had no authority to make hiring and firing decisions in favor of plaintiff's argument that Martin Williams was directly involved.  Williams testified he had nothing to do with filling this position.  Williams depo. at 16-18.  The plaintiff testified he had no evidence otherwise.  Plaintiff depo. II at 104-106, 131.  Marsh testified that Martin Williams recommended all three candidates for the position in question, and Marsh stated Bryan was his choice for the position.  Marsh depo. at 57, 125.

The defendant has put forth substantial reasons that it believed Bryan Williams was the best candidate for the job, which the plaintiff has failed to show were pretextual.   The court is of the opinion that the plaintiff has failed to meet his burden of proof to show that a genuine issue of material fact regarding his promotion claim remains for trial.  As such, the court shall grant the defendant's motion for summary judgment on this claim by separate order.

### Retaliation and Termination

The plaintiff claims that he was terminated in retaliation for his filing an EEOC charge regarding his failure to promote claim, and further, in retaliation for his participation in the pending FLSA action, both in violation of Title VII.

17

Under Title VII, the plaintiff does not have to prove the underlying claim of discrimination in order to establish a retaliation claim. *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir.1999). To establish a prima facie case of retaliation for engaging in protected activity, the court must use the *McDonnell-Douglas* burden shifting standard, discussed in detail, *supra*. The plaintiff must show that he (1) engaged in Title VII protected activity; (2) an adverse employment action occurred; and (3) a causal connection between the protected activity and the adverse employment action exists. *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999); *see also Runyon*, 175 F.3d at 868, citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

To establish a causal connection, a plaintiff must show "that the protected activity and adverse action are not wholly unrelated." *Clover v. Total System Services, Inc.,* 176 F.3d 1346, 1354 (11th Cir.1999) (quoting *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985)). This element is satisfied where the plaintiff provides "sufficient evidence that the decision-maker became aware of this protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir.1997). "It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff

must show that the person taking the adverse action was aware of the protected activity." *Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1119 (11th Cir.2001). The facts before the court demonstrate that within several weeks of the FLSA case being filed in court and the plaintiff's EEOC charge being received by the defendant, the plaintiff was terminated.  The defendant concedes that the plaintiff can satisfy his initial burden regrading his retaliation claim.

However, the defendant asserts that it had a legitimate, nondiscriminatory reason for the plaintiff's termination, namely that plaintiff violated company policy and then lied about it.  The plaintiff responds that he did not lie and that a similarly situated white male, namely Mike Naugle, was treated differently than him.  The court addresses each of these contentions in turn.

Whether or not the plaintiff did in fact lie is not an issue before this court. Rather, the proper issue is whether or not the defendant reasonably believed that the plaintiff lied when confronted.  The Eleventh Circuit has explained that

> ...a defendant may terminate an employee for a good or bad reason without violating federal law. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991). We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984)....

19

*Damon*, 196 F.3d at 1361.   The plaintiff asserts that he only sent Malaspina a blank spread sheet, and that when he told Malaspina that he would obtain other documents, he did not mean it.   The plaintiff does not dispute that providing confidential documents to Malaspina violated defendant's policies, but rather that what he sent was not within the realm of documents so protected.

"An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Gamboa v. American Airlines*, 170 Fed.Appx. 610, 613 (11th Cir.2006)(quoting *Damon*, 193 F.3d at 1363 n. 3.   In another case addressing the truthfulness of an employee, the Court explained

> Warren could properly be discharged based on Defendant's good faith belief that she lied in an internal investigation. In other words, Defendant offered a legitimate nondiscriminatory reason for Warren's termination: Defendant concluded that she had lied in an internal investigation. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (noting that inquiry is not whether employee was guilty of misconduct but whether employer in good faith believed employee had done wrong and whether this belief was the reason for the termination); see also *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 762 n. 6 (9th Cir.1996) ("[A]n employer's discrimination does not immunize its employees from consequences of their wrongdoing.").

*E.E.O.C. v. Total System Services, Inc.*,  221 F.3d 1171, 1176-1177 (11th Cir.2000).

The undisputed evidence before this court is that the defendant believed plaintiff was lying both about what he had sent Malaspina and what he intended to

send in the future.  Whether or not the plaintiff actually took these actions is not relevant as long as the defendant's belief and subsequent employment action on that belief were in good faith.

Plaintiff argues that Naugle was a similarly situated employee who engaged in the same action and was not terminated as evidence that plaintiff's termination was really in retaliation for the EEOC charge and the FLSA suit.  The defendant asserts that Naugle was not similarly situated because when confronted, he was forthright and honest about what he sent to Malaspina.  Additionally, Naugle worked under a different supervisor in a different plant in Tennessee at the time in question.  See Hassler depo. at 87-88.  Thus, the court finds that Naugle was not "similarly situated "in all relevant respects.'" *Wilson*, 376 F.3d at 1091.

Having considered the foregoing, the court is of the opinion that the plaintiff has failed to rebut the defendant's legitimate, non-discriminatory reasons for plaintiff's termination.


## IV.  Conclusion

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact on any of his claims sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion

for summary judgment is hereby **GRANTED**.   The plaintiff's claims   are

**DISMISSED WITH PREJUDICE**.  Each party is to bear its own costs.

      **DONE** and **ORDERED** this the 17th day of April, 2008.


                                          INGE PRYTZ JOHNSON
                                          U.S. DISTRICT JUDGE